1  Eric M. George (State Bar No. 166403)
      egeorge@bgrfirm.com
2  Carl Alan Roth (State Bar No. 151517)
      croth@bgrfirm.com
3  **BROWNE GEORGE ROSS LLP**
4  2121 Avenue of the Stars, Suite 2800
5  Los Angeles, California 90067
   Telephone: (310) 274-7100
6  Facsimile: (310) 275-5697
7
   Attorneys for Plaintiffs
8  Tina Matthews and Paul Tessaro,
   as individuals and on behalf of all others
9  similarly situated

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  TINA MATTHEWS and PAUL TESSARO, as individuals, on their behalf and on behalf of all others similarly situated, | Case No. 2:18-cv-06793-JLS-DFMx Hon. Josephine L. Staton, Courtroom 10A |
| 17              Plaintiffs, | **PLAINTIFFS' OPPOSITION TO (1) UNION DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND (2) OPENING BRIEF OF INTERVENOR CALIFORNIA ATTORNEY GENERAL IN SUPPORT OF UNION DEFENDANTS' MOTION TO DISMISS** |
| 18              vs. | |
| 19  UNITED TEACHERS OF LOS ANGELES; SAN DIEGO EDUCATION ASSOCIATION; CALIFORNIA TEACHERS ASSOCIATION, a California nonprofit corporation; NATIONAL EDUCATION ASSOCIATION; and DOES 1-20, inclusive , | |
| 26              Defendants. | [Filed Concurrently Herewith: Statement of Genuine Disputes of Material Fact in Opposition to Defendants' Motion for Summary Judgment] |
| 27 | Date:  March 29, 2019 Time:  10:30 a.m. Courtroom 10A |
| 28 | Trial Date:  None Set |

1208781.1                                          Case No. 2:18-cv-06793-JLS-DFMx

PLS.' OPP'N TO (1) UNION DEFS.' MOT. TO DISMISS AND FOR J. ON THE PLEADING, AND IN THE ALTERNATIVE FOR SUMM. J. AND (2) OPENING BR. OF INTERVENOR CAL. ATT'Y GEN. IN SUPP. OF UNION DEFS.' MOT. TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................... 2

I.    THE REQUEST FOR PROSPECTIVE INJUNCTIVE RELIEF
SHOULD NOT BE DISMISSED AS MOOT ...................................... 4

II.   THE CLAIMS SHOULD NOT BE LEFT TO PERB FOR
DETERMINATION .............................................................................. 5

    A.   The Union Defendants Have Already Argued That This Case
Presents A Federal Question of Substantial Importance to the
Federal System and Should Remain In Federal Court ........................... 5

    B.   Plaintiffs' Claims Are Not Preempted By EERA ................................. 6

III.  THE UCL CLAIM IS VIABLE ............................................................. 10

IV.  SECTION 1159 SHOULD NOT BE APPLIED SO AS TO
PRECLUDE PLAINTIFFS' CLAIMS ................................................ 11

    A.   Section 1159 Does Not Merely Clarify The Law ................................. 14

    B.   Section 1159 Violates Plaintiffs' Rights To Procedural Due
Process ............................................................................................... 15

    C.   Section 1159 Violates Plaintiffs' Substantive Due Process Rights ...... 18

V.   CONCLUSION .................................................................................... 19

1208781.1

-i-    Case No. 2:18-cv-06793-JLS-DFMx

PLS.' OPP'N TO (1) UNION DEFS.' MOT. TO DISMISS AND FOR J. ON THE PLEADING, AND IN THE ALTERNATIVE FOR
SUMM. J. AND (2) OPENING BR. OF INTERVENOR CAL. ATT'Y GEN. IN SUPP. OF UNION DEFS.' MOT. TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Abood v. Detroit Board of Education*,
    431 U.S. 209 (1977) ............................................................... 12, 14, 15

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009) ...................................... 12, 15, 18, 19

*In re Davis*,
    595 B.R. 818 (Bankr. C.D. Cal. 2019) ......................................... 5

*Janus v. American Federation of State, County, & Municipal Employees, Council 31*,
    138 S. Ct. 2448 (2018)...................... 1, 3, 4, 5, 6, 10, 11, 12, 13, 14, 15, 16, 17, 18

*Rea v. Matteucci*,
    121 F.3d 483 (9th Cir. 1997) .......................................................... 16

*Rivers v. Roadway Express, Inc.*,
    511 U.S. 298 (1994) ........................................................................ 12

## STATE CASES

*Cal. Emp't Stabilization Comm'n v. Payne*,
    31 Cal. 2d 210 (1947) .................................................................... 14

*California Association of Professional Scientists v. Schwarzenegger*,
    137 Cal. App. 4th 371 (2006) ...................................................... 7, 8

*Cansino v. Bank of Am.*,
    224 Cal. App. 4th 1463 (2014) ..................................................... 10

*El Rancho Unified School District v. National Education Association*,
    33 Cal. 3d 946 (1983) ....................................................................... 9

*Fein v. Permanente Med. Grp.*,
    38 Cal. 3d 137 (1985) ..................................................................... 17

*L.A. Mem'l Coliseum Comm'n v. Insomniac, Inc.*,
    233 Cal. App. 4th 803 (2015) ...................................................... 10

1

### TABLE OF AUTHORITIES
**(Continued)**

2

**Page(s)**

3

*Leek v. Washington Unified School District,*
124 Cal. App. 3d 43 (1981) ..................................................................... 9

4

5

*Link v. Antioch Unified School District,*
142 Cal. App. 3d 765 (1983) .............................................................. 8, 9

6

7

*McClung v. Emp't Dev. Dep't,*
34 Cal. 4th 467 (2004) ............................................................. 11, 14, 15

8

9

*Rosefield Packing Co. v. Superior Court,*
4 Cal. 2d 120 (1935) ........................................................................... 17

10

11

*San Lorenzo Education Association v. Wilson,*
32 Cal. 3d 841 (1982) ............................................................................ 8

12

13

*Yoshioka v. Superior Court,*
58 Cal. App. 4th 972 (1997) ........................................................... 15, 16

14

**STATE STATUTES**

15

Cal. Bus. & Prof. Code § 17200 .............................................................. 10

16

Cal. Gov. Code § 1159 ....................... 2, 3, 6, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19

17

Cal. Gov. Code § 1159(a) ....................................................................... 11

18

19

Cal. Gov. Code § 1159(b) ....................................................................... 14

20

Cal. Gov. Code § 1159(e)(1) ................................................................... 14

21

Cal. Gov. Code § 1159(e)(2) ................................................................... 12

22

Cal. Gov. Code § 3514.5 ......................................................................... 10

23

24

25

26

27

28

1208781.1                                    -iii-                    Case No. 2:18-cv-06793-JLS-DFMx

PLS.' OPP'N TO (1) UNION DEFS.' MOT. TO DISMISS AND FOR J. ON THE PLEADING, AND IN THE ALTERNATIVE FOR
SUMM. J. AND (2) OPENING BR. OF INTERVENOR CAL. ATT'Y GEN. IN SUPP. OF UNION DEFS.' MOT. TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs seek return of fees taken from them by the defendant Unions ("Union Defendants") in what has already been deemed by the United States Supreme Court a violation of the United States Constitution.  In light of that decision, any attempt by Union Defendants to seek judgment on the pleadings for claims seeking compensation for Union Defendants' unconstitutional taking must be rejected.

On June 27, 2018, the United States Supreme Court issued its decision in *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018) ("*Janus*").  The Court held that the exaction of so-called agency or fair share fees under a state-law scheme whereby public employees are forced to subsidize a union by the compulsory payment of such fees, even if they choose not to join and strongly object to the positions the union takes in collective bargaining and related activities, violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern.  138 S. Ct. at 2459-60.  Plaintiffs in this action are public school teachers in the State of California for whom Defendants United Teachers of Los Angeles ("UTLA") or San Diego Education Association ("SDEA") have been designated as the exclusive representative.  Plaintiffs, however, were not members of their respective union chapters, but were forced to pay these fees to keep their jobs.  After the Supreme Court ruled in *Janus*, they filed this action to recover these fees under several state-law causes of action.

By virtue of the decision in *Janus* there is no issue to be determined as to whether the Union Defendants' exaction of these agency fees violated Plaintiffs' First Amendment rights.  Indeed, in other post-*Janus* actions a number of these Union Defendants and the California Attorney General have acknowledged that the practice at issue here is unconstitutional in light of *Janus*, and that they have ceased

1  collecting these fees and will not do so in the future.  As a result, there cannot be

2  any claim that there is any labor law issue still to be determined that is within the

3  exclusive jurisdiction of the California Public Employment Relations Board

4  ("PERB").

5         As set forth below, Plaintiffs' claims should not be relegated to PERB for a

6  number of additional reasons, not the least of which is that the Union Defendants

7  have previously argued to this Court that this case should not be remanded to state

8  court because the issues raise a federal question "of substantial importance to the

9  federal system" and "which would impact many other cases around the country

10 concerning public sector unions' collection of fair-share fees prior to [*Janus*]."

11 Moreover, the Union Defendants' reliance on Cal. Gov. Code § 1159 must be

12 rejected as that code section does not apply to the current case and, if it were to be

13 applied, should be deemed unconstitutional.

14 **II.    STATEMENT OF FACTS**

15        The named Plaintiffs are California public school teachers who have not been

16 and are not now members of any of the Defendant unions, but who had been

17 required, as a condition of their continued employment, to pay agency fees.[1]

18 Mr. Tessaro has paid an agency fee of approximately $1,000 per year ($600 after a

19 rebate of approximately $400) through a payroll deduction since he resigned from

20 SDEA in approximately 2004, and Ms. Matthews was subject to payroll deductions

21 of $60-$85 per month.  Neither individual ever consented to paying these fees.

22 Compl. ¶¶ 19-23.

23

24

---

25 [1]      Plaintiffs do not dispute the assertions concerning Ms. Matthews, except to

26 point out that she did not separate from employment in July 2017.  *See*
   Memorandum of Points and Authorities in Support of Union Defendants' Motion to

27 Dismiss and for Judgment on the Pleadings, and in the Alternative For Summary
   Judgment, Dkt. No.  27-1, at n.1 ("Union Mem.").

28

In June 2018, *Janus* held that the practice of exacting agency fees violated the First Amendment as forced speech in support of a union and its activities, by non-union employees who object to these activities.  Compl. ¶¶ 1-4, 16.  The Court also held that it was "hard to estimate how many billions of dollars have been taken from nonmembers and transferred to public-sector unions in violation of the First Amendment."  Hence, Plaintiffs filed the Complaint in California state court, seeking to recover the millions of dollars in fees exacted from nonmembers in California alone.[2]  Compl. ¶¶ 6-7.

Two months after Plaintiffs commenced this action, the Governor of California signed SB No. 846, which provides that the Controller, a public employer and a union shall not be liable for, and shall have a complete defense to, any claims for restitution of the unconstitutional agency fees.  This section is to be applied to claims asserted *before* its enactment – like those here – on the purported basis that it clarifies existing law rather than changes it.  *See* Cal. Gov. Code § 1159 ("§ 1159"); Exhibit 1 to Opening Brief of Intervenor California Attorney General In Support of Union Defendants' Motion To Dismiss, Dkt. No. 32 ("AG Brief").  *See generally* Union Mem. 10-11.

This case is one of four related cases pending before this Court, i.e., *Wilford v. National Education Association*, No. 8:18-cv-1169-JLS-DFM ("*Wilford*"); *Martin v. California Teachers Association*, No. 2:18-cv-08999-JLS-DFM ("*Martin*"); and *Babb v. California Teachers Association*, No. 8:18-cv-0094-JLS-DFM ("*Babb*").  The Union Defendants have filed virtually identical motions in each case and the Attorney General has filed its brief in *Wilford*, which it has then incorporated by reference into its brief in this case.[3]  In view of the identity of issues among these

---

[2]    Union Defendants filed a Notice of Removal on August 8, 2018, Dkt. 1, and by In Chambers Order dated November 15, 2018, Dkt. No. 21, the Court denied Plaintiffs' motion to remand.  Dkt. 21.

[3]    The *Wilford* Brief is Exhibit 1 to the Attorney General's Brief herein and is

1   cases, Plaintiffs incorporate by reference the arguments submitted by the other

2   related plaintiffs in response to the filings by the Union Defendants and the Attorney

3   General.

4       Significantly, the State Defendants in *Babb* (members of the California Public

5   Employment Relations Board ("PERB") against whom the *Babb* plaintiffs sought

6   only prospective injunctive and declaratory relief) and the California Attorney

7   General have conceded that the compulsory agency fee collection is

8   unconstitutional, and have represented that they have stopped collecting these fees

9   and will not do so in the future.  Relying on these representations, the Court in *Babb*

10  granted the state defendants' motion to dismiss on the ground that plaintiffs' claims

11  were moot.  *Babb*, In Chambers Order, Dkt. 76.

12                          <u>**ARGUMENT**</u>

13  **I.    <u>THE REQUEST FOR PROSPECTIVE INJUNCTIVE RELIEF</u>**

14  **<u>SHOULD NOT BE DISMISSED AS MOOT</u>**

15      Even with the utmost of good faith in the intentions of the various unions and

16  others involved in the collection of agency fees, mistakes are made, systems break

17  down and someone may fail to follow the current stated policy of compliance with

18  *Janus*.  Even the UTLA's Controller states that he will be continuing to monitor and

19  audit the payroll deduction rosters to "ensure that non-member bargaining unit

20  employees are not inadvertently subject to any payroll deduction."  Declaration  of

21  Harry Mar ¶ 15, Dkt. No. 27-8.  Prospective injunctive relief is justified, to protect

22  Plaintiffs and others in the proposed class from further "serious[ ] impinge[ment] on

23  First Amendment rights."  *Janus*, 138 S.Ct. at 2464.

24  / / /

25  / / /

26  / / /

27

28  the document referred to above as the "AG Brief."

## II.   THE CLAIMS SHOULD NOT BE LEFT TO PERB FOR DETERMINATION

### A.   The Union Defendants Have Already Argued That This Case Presents A Federal Question of Substantial Importance to the Federal System and Should Remain In Federal Court

In response to Plaintiffs' Motion To Remand this case back to the California Superior Court the Union Defendants were clear and unequivocal: whether *Janus* is retroactive is "necessarily raised" by this case, this issue is "actually and vigorously disputed," and "is a question of substantial importance to the federal system." Opposition to Motion to Remand 16-23, Dkt. No. 19. As they told the Court, "[w]hether *Janus* is retroactive is also a 'substantial' question, the resolution of which would impact many other cases around the country concerning public sector unions' collection of fair-share fees prior to that decision. As the Supreme Court's decision in *Janus* makes clear, 'more than 20 States have statutory schemes built on the [*Abood*] decision' and 'billions of dollars' in fair-share fees were received in reliance on *Abood*. *Janus*, 138 S. Ct. at 2486; *id*. at 2487 (Kagan, J., dissenting). Whether *Janus* is retroactive is thus a question of national importance, not just a question applicable to a particular union in a particular state." *Id.* at 21-22 (alteration in original). However, the Union Defendants did not say a word about their intent to file a subsequent motion seeking to move this case to PERB, a state administrative body of limited jurisdiction.

Although the Court denied the remand motion on other grounds and did not reach the federal question argument, In Chambers Order 2, Dkt. No. 21, this argument may well have influenced the Court's determinations with respect to these other arguments, and it may be impossible to say that this argument had no impact at all. Under these circumstances, the Union Defendants should be estopped from arguing now that this case belongs in front of PERB. *See, e.g.*, *In re Davis*, 595 B.R. 818 (Bankr. C.D. Cal. 2019).

Even if the Union Defendants' change in positions does not require the application of judicial estoppel, their flip-flop completely undermines all of their current arguments about the interpretation of the Educational Employment Relations Act ("EERA") implicated by this case, and that such interpretation "is initially and exclusively a question for PERB" and "falls squarely within PERB's legislatively designated field of expertise."  Union Mem. 8.  In fact, as discussed below, given the Supreme Court's ruling that the agency fee scheme is unconstitutional and the acknowledgment of this result by the unions and the Attorney General, there is nothing left for PERB to do.

**B.**    **Plaintiffs' Claims Are Not Preempted By EERA**

The unique context of this action cannot be ignored – as the Union Defendants do – in determining whether or not PERB has exclusive jurisdiction over Plaintiffs' claims.  To reiterate:  (1) the United States Supreme Court has already determined the dispositive issue, i.e., that the compulsory payment of agency fees violates the First Amendment; (2) the California Attorney General and the unions have conceded this result and have represented to this Court and elsewhere that they are complying with this decision.  *E.g.*, *Babb* In Chambers Order, Dkt. 76.  Thus, the only significant issues remaining to be determined are the constitutionality of § 1159 and whether *Janus* is to be applied retroactively so as to allow Plaintiffs to recover the agency fees taken before the *Janus* decision; (3) the Union Defendants have already told this Court that this latter issue is a substantial federal question of national importance, and not just a question applicable to one case against a particular union in a particular state, such that that action should not be remanded to state court; (4) *Janus* did not make any claim that the agency fee scheme constituted an unfair labor practice, the Supreme Court did not address that issue, and Plaintiffs here make no such claim; and (5) by enacting § 1159 so as to bar all claims for restitution, California has taken even the task of determining a remedy away from PERB (if such a task is otherwise within its jurisdiction).

1    These facts bring this case directly under the teachings of *California*
2  *Association of Professional Scientists v. Schwarzenegger*, 137 Cal. App. 4th 371
3  (2006) ("*CAPS*").  There, the plaintiff challenged a law which changed the pension
4  rights of new employees as impermissibly impairing the pension rights of those
5  employees as secured by their collective bargaining agreement with the state.  While
6  the case was under submission to the trial court, PERB sought to intervene, claiming
7  it had exclusive jurisdiction over the matter.  Similar to the arguments made by
8  Union Defendants here, PERB argued it had exclusive jurisdiction over all matters
9  that arguably alleged violations of the Dills Act, and that implementation of the
10  alternate retirement program "arguably" violated that law.  137 Cal. App. 4th at 378.
11  The Court of Appeal affirmed the denial of PERB's petition, stating, that "[t]he
12  Board's claim that it has a direct and immediate interest in this case because it has
13  the exclusive initial jurisdiction to act on alleged violations of the Dills Act
14  misapprehends the gravamen of *CAPS*'s complaint here."  *Id.* at 381.  The *CAPS*
15  court then explained that "the gravamen of *CAPS*'s complaint is *not* that the state
16  committed an unfair labor practice in violation of the Dills Act . . . .  Rather, the
17  gravamen of *CAPS*'s complaint is that SB No. 1105 . . . impermissibly conflicts with
18  the terms of the agreement and therefore violates the state and federal constitutional
19  prohibitions against impairing the obligations of contracts."  *Id.*
20    The *CAPS* court concluded that "[t]his issue is not within the scope of the
21  Board's exclusive jurisdiction under section 3514.5; rather, it is an issue for the
22  judiciary.  Even if we assume for the sake of argument that the state had an
23  obligation under the Dills Act to give *CAPS* notice and an opportunity to request
24  collective bargaining before enacting the new alternate retirement program, and
25  failed to fulfill that obligation, that would not transform this case into an unfair labor
26  practice case."  *Id.* (citation omitted).
27    Significantly for this case, in reaching that conclusion the *CAPS* court held
28  that "[t]he constitutional issue *CAPS* seeks to litigate here is separate and distinct

1208781.1

-7-

Case No. 2:18-cv-06793-JLS-DFMx

PLS.' OPP'N TO (1) UNION DEFS.' MOT. TO DISMISS AND FOR J. ON THE PLEADING, AND IN THE ALTERNATIVE FOR
SUMM. J. AND (2) OPENING BR. OF INTERVENOR CAL. ATT'Y GEN. IN SUPP. OF UNION DEFS.' MOT. TO DISMISS

from any issue of whether the state violated its collective bargaining obligations under the Dills Act." *Id.* at 381-82. Whether or not the constitutional issues in *CAPS* and this case are different, the principle is the same – the Court need not interpret EERA to decide if the agency fee scheme is constitutional since the United States Supreme Court already has done so, and the constitutionality of § 1159 "is separate and distinct from any issue" as to whether the state or the unions violated the EERA.

The California Supreme Court reached the same conclusion in *San Lorenzo Education Association v. Wilson*, 32 Cal. 3d 841, 853 (1982). There, in connection with union claims against employees who refused to either join the union or pay the service fee, an amicus brief argued that PERB had exclusive jurisdiction. The California Supreme Court disagreed, stating, "[w]e do not dispute that PERB has exclusive jurisdiction over issues concerning unfair labor practices. The case at bar, however, does not involve a dispute over an unfair practice. Rather, at issue is whether the union, under the terms of the collective bargaining agreement, can file a civil suit against a noncomplying employee." *Id.* The prior case involving the amicus party was distinguishable because it also contained numerous issues involving unfair practices, unlike the *San Lorenzo* case. Thus, as the court held, "because no unfair practice has been claimed, PERB had no jurisdiction to hear the claims at bar." *Id.*

*Link v. Antioch Unified School District*, 142 Cal. App. 3d 765, 769 (1983), Union Mem. 8, does not suggest a different result. There, the Court of Appeal stated that it had to look beyond the "constitutional label" given to the plaintiffs' claims, noting that "the substance of conduct complained of may also constitute unfair practices which arguably could be resolved by a PERB ruling." *Id.* Moreover, the court added, "the PERB [might] exercise initial jurisdiction over those nominal constitutional violations" to "devise a method to allow plaintiffs to avoid payment for those political and ideological activities" they challenge, and

referred to the "nominal constitutional violations" they had asserted.  *Id.*  Notably, in reaching its result, the *Link* court relied primarily on *Leek v. Washington Unified School District*, 124 Cal. App. 3d 43, 50-51 (1981).  Union Mem. 8.  There, the plaintiffs had claimed that the mandatory service fee provision in their collective bargaining agreement violated several provisions of EERA, along with their claim that their constitutional rights had been violated.  In both cases the "constitutional" claims required interpretation of the provisions of EERA itself, a task already taken care of by the Supreme Court here.  Because the plaintiffs' claims directly implicated EERA, and thus on that basis alone fell within PERB's jurisdiction, the analysis in *Leek* is irrelevant here, where no EERA claim has been asserted.

*El Rancho Unified School District v. National Education Association*, 33 Cal. 3d 946 (1983), Union Mem. 7-8, is to similar effect.  There, the principal issue was whether EERA divested a court of jurisdiction over a school district's tort suit for damages arising out of a noncertified teacher's strike, where, before bringing the tort action, the district had filed an unfair practice charge with PERB and had appealed PERB's dismissal of the claims, filing the tort action while its PERB appeal was pending.  Even if the district voluntarily withdrew its unfair practice charge "without prejudice," 33 Cal. 3d at 951 & n.7, its claims unquestionably involved EERA and PERB's jurisdiction.[4]

Plaintiffs' constitutional claims here are neither mere "labels" nor "nominal," and are not efforts to plead around PERB's jurisdiction.  The Supreme Court has

---

[4]     The "arguably protected or prohibited" analysis discussed in *El Rancho*, Union Mem. 7-8, is not helpful here, underscoring the unique context of this case. If Union Defendants contend that EERA "arguably protects" the unconstitutional taking of agency fees, that is inconsistent with their assurances that the agency fee provisions are unconstitutional and unenforceable. On the other hand, while those provisions remain as part of EERA, they preclude a claim that the agency fee scheme is "arguably prohibited."

1  already concluded that the agency fees Plaintiffs now seek to recover were taken

2  from them in violation of their First Amendment rights.

3       Finally, focusing on the appropriate remedy for the Union Defendants'

4  violations of Plaintiffs' free speech rights does not alter the analysis.  Although

5  PERB does have the power to determine remedies, such remedies are in connection

6  with a determination that charges of unfair practices are justified.  Cal. Gov. Code

7  § 3514.5.  There are no charges of unfair practices in this case, and PERB should

8  not be determining the remedy for the constitutional violations already found by the

9  Supreme Court.  In addition, since the Supreme Court has stated very clearly that *no*

10 agency fee or any other payment to the union may be deducted from a nonmember's

11 wages, *Janus*, 138 S. Ct. at 2486, there is nothing for PERB to do in calculating a

12 remedy.  Moreover, as already discussed, with § 1159 as an ostensible obstacle to

13 Plaintiffs' recovery, dismissal of Plaintiffs' claims in favor of PERB jurisdiction is

14 an exercise in futility.

15 **III.   THE UCL CLAIM IS VIABLE**

16      California's unfair competition law, Cal. Bus. & Prof. Code § 17200

17 ("UCL"), proscribes "any unlawful, unfair or fraudulent business act or practice,"

18 and unfair and fraudulent practices are alternate grounds for relief, *L.A. Mem'l*

19 *Coliseum Comm'n v. Insomniac, Inc*., 233 Cal. App. 4th 803, 835 (2015).

20 Violations of federal statutes may serve as the predicate for a UCL cause of action.

21 California courts "have consistently interpreted the language of section 17200

22 broadly."  *Cansino v. Bank of Am*., 224 Cal. App. 4th 1463, 1473-74 (2014).

23      The Union Defendants' assertion that the collection of millions of dollars of

24 agency fees in violation of the First Amendment, by unions representing hundreds

25 of thousands of employees, is not a business practice – with a citation to a case

26 involving a homeowners association which "does not participate as a business in the

27 commercial market," Union Mem. 9-10 – is without any merit, to say the least.

28 Without a doubt the unions are big business; the Declarations submitted here by

1   their Controllers describe significant financial operations, which would be

2   characterized as businesses, as that term is commonly understood.  Their exaction of

3   these agency fees from nonmembers in violation of the First Amendment is an

4   unfair business practice.

5   **IV.   SECTION 1159 SHOULD NOT BE APPLIED SO AS TO PRECLUDE**

6   **PLAINTIFFS' CLAIMS**

7          In direct response to *Janus*, and targeted directly at this and the other post-

8   *Janus* actions seeking to recover some of the billions of dollars taken from

9   nonmembers in violation of the First Amendment, the Governor signed SB No. 846

10  on September 14, 2018, adding § 1159 to the Government Code.  AG Br. 1.  The

11  law provides that the California Controller, public employers and employee

12  organizations (like Union Defendants herein) "shall not be liable for, and shall have

13  a complete defense to, any claims or actions . . . for requiring, deducting, receiving,

14  or retaining agency or fair share fees from public employees."  Cal. Gov. Code

15  § 1159(a).  In addition, former or current public employees do not have standing to

16  pursue these claims, ensuring that any action will be terminated at its outset and that

17  a court never will address the merits.  This law applies to pending claims and

18  actions, and purportedly, such application clarifies existing state law rather than

19  changes it.

20         Here too, in view of the unique posture of this case, the Court should reject

21  the Union Defendants' efforts to protect § 1159.

22         First, § 1159 does not apply to Plaintiffs' claims.  The preclusive language of

23  § 1159 only governs claims for those fees which "were permitted at the time under

24  the laws of this state then in force and paid . . . prior to June 27, 2018."  Cal. Gov.

25  Code § 1159(a).  However, when the United States Supreme Court interprets a

26  statute, it is "an authoritative statement of what the statute meant before as well as

27  after the decision of the case giving rise to that construction," which is why a

28  judicial decision generally applies retroactively.  *McClung v. Emp't Dev. Dep't*,

34 Cal. 4th 467, 474 (2004) (internal quotation mark omitted) (quoting *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 & n.12 (1994)).  Thus, the agency fee scheme ostensibly permitted under California law before *Janus* in fact violated the First Amendment at all times and should never have been sanctioned.

Second, Plaintiffs' claims are based upon the unconstitutionality of the agency fee scheme, and this central issue already has been determined by the United States Supreme Court in a final and unreviewable decision.  As such, these should be more than the inchoate claims which courts have held afford no enforceable property right.  *See, e.g.*, *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1141 (9th Cir. 2009).

Third, after the Supreme Court issued its decision, the California Legislature (and, presumably the Governor) rushed to eviscerate the rights created by *Janus*. According to the Attorney General, § 1159 was signed into law less than three weeks after its language was added as section 1 to Senate Bill No. 846, AG Br. 7-8, and was aimed directly at "these very lawsuits," *id.* at 9.

Fourth, the Legislature has stated as its purported rational basis for § 1159 that "This section is necessary to provide certainty to public employers and employee organizations that relied on state law, and to avoid disruption of public employee labor relations, after the Supreme Court's decision in Janus . . . ."  Cal. Gov. Code § 1159(e)(2).  In doing so, it simply ignored the Supreme Court's express rejection of this excuse as a reason to continue these unconstitutional agency-fee arrangements.  Indeed, the Court explained its decision to overrule *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), by stating that the unions had been on notice "for years" of the Court's misgivings about *Abood*. Hence, any union "must have understood that the constitutionality of such a[n] [agency fee] provision was uncertain." *Janus*, 138 S. Ct. at 2484-85.  In fact, the Union Defendants anticipated the potential overruling of *Abood* and planned ahead, with the CTA's Associate Executive Director/Controller starting that process in

1  January 2018.  Declaration of Wei Pan ¶ 7, Dkt. No. 27-5; *see also* Declaration of

2  Harry Mar ¶ 8, Dkt. No. 27-8.

3      Fifth, in addition to the fact that the stated reliance concerns are an

4  insufficient justification for this legislation, the need to provide "certainty" is

5  similarly an inadequate rationale.  To the extent that agency-fee payors are

6  permitted to seek restitution, such a process will be limited and finite.  Once the

7  three-year anniversary of *Janus* arrives the various defendants will know the full

8  extent of the claims with which they will have to contend.  It is likely that they

9  already have calculated their worst-case scenarios, i.e., the amounts to be returned if

10  all eligible agency-fee payors seek restitution.

11      Sixth, the Supreme Court ruled that the agency-fee schemes must be subject

12  to "exacting scrutiny" at least in judging their constitutionality and that a rational

13  basis review would be insufficient, given the significant impingement on First

14  Amendment rights inherent in these arrangements.[5]  "Under 'exacting'

15  scrutiny, . . . a compelled subsidy must 'serve a compelling state interest that cannot

16  be achieved through means significantly less restrictive of associational freedoms.'"

17  138 S. Ct. at 2465.  Since § 1159 likewise impinges the First Amendment rights of

18  the payors in taking away their remedies, it too must be subject to exacting scrutiny.

19  It does not appear that that the Legislature undertook such a review in the

20  exceedingly brief period between the introduction of this provision and its

21  enactment.

22      For all of these reasons and those set forth below, § 1159 does not pass

23  constitutional muster.

24

25

26

---

27  [5]      The Court observed that the agency-fee scheme might be subject to "strict
   scrutiny" but did not have to decide that question, because the scheme could not

28  even survive the more permissive "exacting scrutiny test."  138 S. Ct. at 2465.

**A.** <u>**Section 1159 Does Not Merely Clarify The Law**</u>

By its express language, § 1159 operates retroactively, so as to cut off all claims pending as of its effective date.  Cal. Gov. Code § 1159(b).  The Attorney General acknowledges that if this provision changes the law, its retroactive application raises constitutional questions.  On the other hand, such questions do not arise if the statute merely clarifies the law.  AG Br. 6, 10.  Not surprisingly, § 1159 says that it clarifies existing law, Cal. Gov. Code § 1159(e)(1), and the Attorney General agrees, AG Br. 7-8.

This provision in fact changes the law, so as to raise the attendant constitutional implications.  A declaration that a statutory amendment "merely clarified the law 'cannot be given an obviously absurd effect, and the court cannot accept the Legislative statement that an unmistakable change in the statute is nothing more than a clarification and restatement of its original terms.'"  *McClung*, 34 Cal. 4th at 473 (quoting *Cal. Emp't Stabilization Comm'n v. Payne*, 31 Cal. 2d 210, 214 (1947)).  There, the court held that the amendment in question imposed liability that did not otherwise exist, despite the fact that it said it was "declaratory of existing law."  Because the Court had already finally and definitively interpreted the provision, the Legislature had no power to decide that the later amendment merely declared existing law.

Here, any contention that § 1159 merely clarified the law also is "obviously absurd."  It is a brand-new section added to the Government Code and does not "amend" anything.  Moreover, the change effectuated by § 1159 dramatically changed the reasonable expectations that the unions and agency-fee payors had as to the likelihood that the fees would terminate in the near future.  As already discussed, the Supreme Court emphasized that the unions had been on notice "for years" of the Court's misgivings about *Abood*, and "must have understood that the constitutionality of such a[n] [agency fee] provision was uncertain."  *Janus*, 138 S. Ct. at 2484-85.  There is no reason to conclude that nonmember agency-fee

1  payors were not similarly on notice, and they would have had no reason to believe

2  that when the time came for the Court to overrule *Abood*, that their right to recover

3  these wrongly taken fees would be stripped away.  Thus, as of the date of the *Janus*

4  decision these nonmembers had every "legitimate expectation" of receiving those

5  fees and many of them, including Plaintiffs, proceeded in good faith with litigation

6  to recover these payments.  The addition of § 1159 a few months later clearly

7  dashed those expectations and just as clearly changed the law.

8      More particularly, on June 27, 2018, if not before, Plaintiffs had standing to

9  assert the claims in their Complaint, and the Union Defendants had no basis to claim

10  that they were immune from liability.  Now, they do not have standing and are faced

11  with the Union Defendants' claims of immunity.  Now that § 1159 is on the books,

12  the Union Defendants contend that Plaintiffs are absolutely precluded from

13  obtaining any remedy for Union Defendants' violations of their constitutional rights.

14  The Attorney General's comment that "[i]f section 1159 did not exist, Plaintiffs

15  would still have to overcome the fact that the Defendants . . . were complying with

16  state law and Supreme Court precedent prior to *Abood* being overruled," AG Br. 9,

17  misses the point.  That a plaintiff will have to confront its adversary's defenses is

18  part and parcel of any litigation, but is a far cry from the absolute preclusion

19  effected by § 1159.

20      In short, this provision is operating retrospectively as it applies to previously

21  pending claims, with the attendant constitutional implications.  *McClung*,

22  34 Cal. 4th at 476-77; *Yoshioka v. Superior Court*, 58 Cal. App. 4th 972, 981

23  (1997).

24  **B.      Section 1159 Violates Plaintiffs' Rights To Procedural Due Process**

25      A standard response to a claim of a procedural due process violation with

26  respect to enactment of a statute is that the legislative determination in passing the

27  statute provides all the process that is due.  *See, e.g.*, *Ileto*, 565 F.3d at 1142; AG

28

Br. 11-12.  The Attorney General and the Union Defendants cannot fall back on this response here.

As already shown, § 1159 – "intended to address these very lawsuits" – was rushed through the Legislature in less than three weeks.  *Supra* p. 12.  The Attorney General has not provided evidence of any hearing or other fact-finding, or, more to the point, whether the Legislature provided any notice to the plaintiffs in "these very lawsuits" or invited them to be heard before enacting this provision taking away their rights to sue for restitution.  Nor, apparently, did the Legislature evaluate § 1159 using the exacting scrutiny standard in compliance with the Supreme Court's direction in *Janus*.  All of these defects violated Plaintiffs' rights to due process.  *Cf. Rea v. Matteucci*, 121 F.3d 483 (9th Cir. 1997).

In *Rea*, the plaintiff claimed that her due process rights had been violated by the legislature's reclassification of her position as a hearing officer for the state of Nevada and her subsequent termination.  Although the Ninth Circuit affirmed the district court's grant of summary judgment for the defendant and held that there was no violation of due process, it explained that the standard rule did not "eviscerate" all due process rights of the plaintiff.  121 F.3d at 485.  Where, as in *Rea* and here, a state alters a property interest by legislative action, "an individual claiming a defect in that process might have a claim for due process violations."  *Id*.  Such a defect might include that the legislation was arbitrary or irrational, or where the legislation was not generally applicable and individually targeted known and identifiable parties.

This case presents such defects in the legislative process.  Section 1159 as passed violates Plaintiffs' due process rights.  At the very least, the Court should not rely on this statute to dismiss this action at this very early stage of the case.

In addition, because this statute operates so as to eliminate *all* rights to recover the agency fees exacted under California's unconstitutional agency fee scheme, it should be declared unconstitutional.  *See, e.g.*, *Yoshioka*, 58 Cal. App. 4th

1  at 982 (The retroactive application of Proposition 213 prohibiting uninsured

2  motorists and drunk drivers from collecting noneconomic damages in actions

3  involving the operation or use of a motor vehicle, which altered the prior right to do

4  so, was not unconstitutional.  "Such alteration is only forbidden when at the very

5  least the party is deprived of *every reasonable method of securing just*

6  *compensation.*"); *see also Fein v. Permanente Med. Grp.*, 38 Cal. 3d 137, 159

7  (1985) (In ruling that the ceiling on non-economic damages imposed by the Medical

8  Injury Compensation Reform Act did not deny due process, the court noted that the

9  Legislature had placed no limits at all on a plaintiff's right to recover for all of the

10  economic, pecuniary damages resulting from an injury.).

11      In ruling that the legislature may shorten or extend a statute of limitations and

12  can apply the changed period to pending proceedings, the California Supreme Court

13  emphasized in *Rosefield Packing Co. v. Superior Court*, 4 Cal. 2d 120, 122-23

14  (1935) that there was "one important qualification to the rule:"

15      [W]here the change in remedy, as, for example, the shortening of a time
       limit provision, is made retroactive, there must be a reasonable time
16      permitted for the party affected to avail himself of his remedy before
       the statute takes effect. If the statute operates immediately to cut off the
17      existing remedy, or within so short a time as to give the party no
       reasonable opportunity to exercise his remedy, then the retroactive
18      application of it is unconstitutional as to such party.

19      Here, § 1159 has left Plaintiffs without any opportunity to obtain a remedy for

20  the Union Defendants' violations of Plaintiffs' First Amendment rights.  As such, it

21  should be subject to the same "exacting scrutiny" *Janus* applied to the agency fee

22  practice, 138 S. Ct. at 2464-65, and likewise declared unconstitutional.  Although

23  the Attorney General contends that § 1159 is not a total bar to Plaintiffs' recovery

24  and leaves open other claims for recoupment of the agency fees "collected in

25  violation of pre-*Janus* law," AG Br. 16, he does not explain this cryptic comment or

26  what other claims are left open.  The qualification "collected in violation of pre-

27  *Janus* law" indicates that these other claims are a very limited class, are not

28  available to Plaintiffs, and that, in fact, § 1159 is a *total* bar to their recovery.

**C.**     <u>**Section 1159 Violates Plaintiffs' Substantive Due Process Rights**</u>

Although the general rule is that legislative bodies have the power to pass laws barring claims on a retroactive basis, as long as they have a rational basis to do so, *Ileto*, 565 F.3d at 1140-41; AG Br. 14, that rule should not govern here.

*Ileto* involved the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901-7903, Pub. L. No. 109-92, § 2, 119 Stat. 2095 (2005), by which Congress protected federally licensed manufacturers and sellers of firearms from most civil liability for injuries independently and intentionally inflicted by criminals who used their non-defective products. PLCAA did not preempt claims falling within any of the specified exceptions. Among other attacks, the plaintiffs contended that the statute was unconstitutional on several grounds, including that it violated their procedural and substantive due process rights. The court rejected the substantive due process claim on the basis that "[B]arring irrational or arbitrary conduct, Congress can adjust the incidents of our economic lives as it sees fit." 565 F.3d at 1140 (alteration in original).

The plaintiffs also argued that due process principles required the court to conduct a more searching review. The court, too, rejected this argument, stating that the plaintiffs had failed to identify – and the court failed to see – any suspect classification common to those adversely affected by the PLCAA. *Id.* at 1141.

In *Janus*, however, the Supreme Court held that a more searching review was required, given the significant First Amendment concerns raised by the agency-fee scheme's impingement on payors' First Amendment rights. According to the Court, the rational basis standard allowed in *Ileto* constituted "a form of minimal scrutiny foreign to our free-speech jurisprudence, and we reject it here." 138 S. Ct. at 2465.

Instead, the Court subjected the agency-fee scheme to an exacting scrutiny standard and thereby found the scheme to be unconstitutional. Section 1159, as an impediment to Plaintiffs' remedies for these First Amendment violations, should be subject to the same standard. Under such scrutiny, this statute does not pass muster.

1    Indeed, as already discussed, the legislative justifications provided to satisfy a
2  rational basis review are insufficient, *see supra* pp. 12-13, and certainly will not
3  satisfy an exacting scrutiny review.  The claims here are limited and finite (unlike
4  the gun violence claims at issue in *Ileto*) and Plaintiffs should not be precluded by
5  § 1159 from obtaining some redress for the violations of their First Amendment
6  rights.

7  **V.    <u>CONCLUSION</u>**

8    For all of the foregoing reasons, the Union Defendants' Motion to Dismiss
9  and for Judgment on the Pleadings, and in the Alternative for Summary Judgment
10  should be denied in all respects.

11  Dated:  March 1. 2019              BROWNE GEORGE ROSS LLP
                                       Eric M. George
12                                     Carl Alan Roth

13

14                                By:  _____/s/ Carl Alan Roth_____
                                       Eric M. George
15                                     Carl Alan Roth
16                                Attorneys for Plaintiffs
                                  Tina Matthews and Paul Tessaro
17                                as individuals and on behalf of all others
                                  similarly situated
18

19

20

21

22

23

24

25

26

27

28